JOHN FRYREAR, appellant, *v.* GARRETT L. LAWRENCE *et al.*, appellees.

*Appeal from Scott.*

It is only when the defendant, in a suit of Chancery, states facts within his knowledge, that his answer must be overcome by evidence equivalent to the testimony of two witnesses.

A copy of a record of a County Court in Missouri, properly certified under the Act of Congress, showing a settlement and final determination of an administration upon an estate, and adjudging a balance in favor of the administration, and against the estate, was *held* conclusive as to all matters within the jurisdiction of such Court, unless impeached for fraud.

BILL IN CHANCERY in the Scott Circuit Court, brought by the appellees against the appellant and others. A decree was rendered in favor of the appellees for the sum of $159, among other things, and entered as of the October term, 1847, having been decided in vacation by the Hon. Samuel D. Lockwood, presiding judge.

The following is an abstract of the pleadings and evidence in the case:

On the 19th of February, 1846, the appellees exhibited their bill in Chancery against the appellant, his wife Betsey, Joseph H. Berry, as administrator of James Lawrence, deceased and others, alleging, among other things, that the said deceased died intestate in the State of Missouri, and that said appellees, as his brother and sister, were "his only heirs at law, and as such, are entitled to all of 'his' estate, both land and personal property." That the said Berry, as administrator, had obtained certain notes and a mortgage, and foreclosed the same and bought in the mortgaged premises, and he, appellant, and his wife had contracted to convey the mortgaged premises to Burkenmayer & Co.; and that the contract had not been consummated, and that said appellees were entitled to the mortgaged premises as heirs at law as aforesaid. There was this charge in the bill: "Your complainants further aver that the said Fryrear, and the said Betsey Silvers has received from said Berry, and from other

sources, large sums of money belonging to the said estate, knowing that they were not entitled to the same." The bill also alleged, that appellant's wife had lived in a state of concubinage with said deceased, and never was his lawful wife, and that she and the appellant fraudulently combined to appropriate the estate of said deceased to their own use. There were five special interrogatories propounded in the bill to the appellant, and the first was in these words: "What amount of money and property he received by and of this Betsey Silvers, *alias* Betsey Fryrear, and whether he did not know that it was out of the estate of Lawrence?"

The defendants, on oath, filed joint and several answers to to the bill on the 16th of May, 1846. The appellant and his wife answered that they were married according to law in Missouri, on the 26th of August, 1837; that the appellant, in the county of Morgan, and State of Missouri, on the 3d of November, 1838, was appointed administrator of said deceased, who was domiciled in that county at the time of his death; that the appellant had entered into bond with security in the penalty of $3,200, conditioned for his faithful administration of said estate; that he had not finally settled his administration; that he would do so at the earliest practicable day, and bring the result into Court duly certified; that he was persuaded that on the final settlement of the estate, there would be due him, as administrator, about the sum of one hundred dollars, which he asserted as a claim of higher dignity against the estate of said deceased than that asserted by the complainants. He made profert of a copy of his letters of administration as a part of his answer, and further stated that after his administration, he placed in the hands of the defendant, Berry, for collection, the McCaleb notes and mortgage, and caused the said Berry to take out administration in the county of Scott, State of Illinois, as ancillary to the aforesaid administration of the appellant, that he, for himself and wife, on the 10th of March, 1845, entered into contract with, &c., for conveyance of bonds, &c. The defendant, Berry, stated that he, as administrator, had not paid one cent to the appellant and his wife. The following is an extract

from said answer: "Complainants claim that they are the only heirs at law of said James Lawrence, as his brother and sister. From conflicting accounts given by complainant, Garret L. and the said James Lawrence of their ancestry and relations, respondents, John and Betsey, unequivocally denying that the complainants are the heirs at law of the said James Lawrence, and of their being so said respondents require full and satisfactory proof."

The complainants took no exception to the answer, and filed a replication thereto on the 22d of May, 1846.

On the 4th of June, 1846, the respondents filed an account current of the defendant, Berry, as administrator, charging himself with the notes that came to his hands as such, $1918·90, &c., and showing that there was a balance of $12·51 due him. To this account, the complainants filed exceptions, and exhibited accounts at the September term, 1846, not by leave of the Court, or by way of amendment of bill against the defendant, Berry, for a balance of $551·72, and against the appellant for $1962·80, charging, for the first time, after John McCaleb's deposition had been taken in August, 1846, certain items as proven by his deposition.

The appellant, on the 17th of November, 1846, filed his cross bill against the complainants and others, exhibiting his final settlement as administrator of the estate of said Lawrence with the county court of Morgan county, in the State of Missouri, made on notice, and showing a balance to be due him as such administrator on the 3d of November, 1846, amounting to $249·62, and claiming to be re-imbursed out of what was claimed by the complainants as heirs at law of said deceased, if they made their claim good and alleging that appellant's claim to that extent was preferable to, &c., and waiving answer to the cross bill on oath.

The complainants objected to the filing of the cross bill, which objection being overruled, they were ruled to answer the same. An answer and replication thereto was filed on the 18th of November, 1846.

On the 26th of August, 1846, the depositions of Wm. B. Hatfield, Isaac Killam, and John McCaleb, and on the 22nd

of August, 1846, the deposition of Enoch P. Sloane was taken by the complainants. The said deposition, it was contended, proved nothing as to the issues involving the true state of accounts between the parties, and as to the heritable rights alleged by complainants. In order to make out their exclusive claim as heirs, the complainants took the deposition of their mother, Hessey Lawrence, on the 26th of May, 1847, by whom only do they prove said claim, which is denied by the answer, and in it full proof is demanded.

On this state of pleadings and proofs, the Circuit Court decreed—

1. In favor of, and establishing the heritable rights of the appellees on the testimony of only one witness without corroborating circumstances, as the appellant contended, the answer on oath having denied said heritable rights.

2. Disallowing and rejecting appellant's demand set forth in his cross bill, and decreeing that he should pay the appellees the sum of $159.

Those, with the following, were the errors assigned and relied upon by the appellant, to wit: That the appellees' bill was not dismissed for want of full legal proof of their rights as heirs of, &c., as alleged in said bill.

*D. A. Smith,* for the appellant.

For the rule of evidence establishing heirship, see 2 Greenl. Ev. § 354.

As authorities sustaining the first and third assignments of error, see 2 Story's Eq. Jur. § 1528 ; 1 Greenl. Ev. §§ 260, 351 ; *Martin* v. *Dryden,* 1 Gilm. 187.

To sustain the second assignment of error, see *Caldwell* v. *Lockridge,* 9 'Missouri, 363 ; 2 Greenl. Ev. § 365 ; 1 do. § 41.

*M. McConnell,* for the appellees.

The Opinion of the Court was delivered by

CATON, J. Fryrear alone has taken an appeal, and he presents two questions for our consideration, which will be

noticed.   The complainants allege, that they are the only
heirs at law of James Lawrence, deceased.   This the pres-
ent plaintiff attempts to deny in very positive terms, in his
answer, which he supposes is sufficient to put the complain-
ants upon the proof of that fact by two witnesses.   This
denial is in these words: "From conflicting accounts given
by the complainant Garrett L. and the said James Law-
rence of their ancestry and relations, respondents John and
Betsey unqualifiedly deny that the complainants are the
heirs at law of the said James Lawrence."   Although this
denial professes to be unqualified in terms, yet it contains
within itself the admission that the defendants had no knowl-
edge of the fact about which they have the effrontery to
swear so positively.   This positive denial, so far from re-
quiring two witnesses to overcome it, only serves to show
how reckless Fryrear was of his oath, in swearing to a
statement absolutely, which he admits he personally knows
nothing about; relying upon such inferences as he drew from
the hearsay of others; and it should admonish us to look with
suspicion upon whatever else he may choose to swear to.
While a defendant's answer, which is required to be sworn
to, is made evidence in the cause by the complainant, it is
only entitled to weight when it is entitled to belief; and if
he chooses to swear to that which the Court sees he cannot,
or which he admits he does not know, he is entitled to no
more credit, and is subject to the same censure and condem-
nation, as any other reckless witness, who, the Court sees, is
trying to impose upon it his belief, when he should only
speak of his knowledge.   The Court is not a mere machine
to weigh everything that is offered without examining its
value, any more when the defendant's oath is put into the
scale, than when examining the testimony of any other wit-
ness.   It is only when the defendant states facts within his
knowledge, that his answer has to be overcome by evidence
equivalent to the testimony of two witnesses.   This denial
amounts to no more than the belief of the defendant, founded
upon contradictory statements made by one of the complain-
ants, and James Lawrence, and what those statements were,

or whether he only used them by hearsay, he does not inform us. The defendant below has not inspired us with sufficient confidence to induce us to allow this opinion of his to neutralize the testimony of one witness.

The evidence is abundant throughout the record, showing that James Lawrence was the son of Jehonidab Lawrence, of Maryland, and that the complainants are half-brother and sister of James. By the testimony of Hessey Lawrence, who was the second wife of Jehonidab Lawrence, and the mother of the complainants, we are informed that her late husband had by his former wife five children living at the time of his marriage with the witness. Of these, James was the second. The only daughter died in New Jersey without issue. The eldest son left for the western country twelve or fourteen years ago, in bad health, and had not been heard of since. The two youngest left for New Orleans more than twenty years since, and had not been heard of, and the family had for many years believed all three to be dead. After so long an absence, without being heard from, the law will presume them dead. The witness does not state whether either of those three had been married, but she was requested in the interrogatory in the commission to state all she knew of the family of Jehonidab Lawrence, and she is quite minute in the account she gives, and she concludes her answer with this statement: "This makes up the whole history of the family of Jehonidab Lawrence as this deponent has understood it, for the past thirty years, and as she now believes." She had previously stated that the complainants were her only children by Jehonidab Lawrence, and that he had been dead for many years. We think this evidence sufficiently shows that the complainants are the only surviving heirs of James Lawrence, except as to his own wife and children, who are shown to be dead by another witness.

The right of the complainants to call the defendants to an account, it becomes necessary to inquire whether the evidence justifies the decree against Fryrear. In the Court below, the certified copy of the record of the Morgan County Court from Missouri, exhibited by the cross bill of Fryrear,

was evidently rejected as incompetent evidence. This record shows a settlement and final determination of the administration of John Fryrear, administrator of the estate of James Lawrence, deceased, in which the Court found and adjudged a balance in favor of the administrator and against the estate of $249·62. This record is properly certified under the Act of Congress, and as such must be considered as conclusive as to all matters within the jurisdiction, unless impeached for fraud. We have not the means, even if we had the power, of investigating the propriety of that adjudication, and it was not the duty of the complainant in the cross bill to come here prepared to show that the decision was right. This adjudication must be considered as settling the rights of the parties so far as Fryrear acted as administrator in Missouri, but it cannot affect his liabilities for the estate which came to his hands in this State. McCaleb swears that he paid him $202 in this State, of money due the estate of Lawrence, and that he also paid $154 to Hatfield, by the direction of Fryrear, for the support of the wife and children of the intestate, after he had deserted them in Ohio, and run off with Mrs. Silvers. We are satisfied from the testimony of Hatfield, that this was a just claim against the estate, and that Fryrear ought not to be charged with it. The balance is then easily struck. He is to be allowed against the estate, the balance found in his favor by the Morgan County Court, $249·62, with interest from the third day of November, 1846, amounting to $282·67, which is to be deducted from $202, with interest from the third day of November, 1841, amounting to $289·36, leaving a balance in favor of the complainants of $6·69, instead of $159 as was found by the Court below, and the decree must be modified accordingly. Fryrear is entitled to his costs in this Court.

*Decree modified.*